EUGENE VANDERPOOL, treasurer &c.,

*v.*

JOHN S. WILLIS, executor, et al.

The fact that the complainant, who is a simple contract creditor, is a creditor
of trustees, and that the debt was incurred for the benefit of the *cestui que trust*,
and that the trustees are alleged to be insolvent, and one of them wasting the
estate, gives the complainant no right to collect his debt in equity, nor, to that
end, to call the trustees to account here.

Bill for relief.   On final hearing on .pleadings and proofs.

*Mr. S. H. Little*, for complainant.

*Mr. G. T. Werts*, for defendants.

THE CHANCELLOR.

This suit is brought by the treasurer of the state asylum for
the insane at Morristown, against Charles B. Norris and John S.
Willis, executors of the last will and testament of Andrew Shaw-
ger, deceased, Charles B. Norris as the guardian of Mary
Shawger, a lunatic, widow of the testator, Mary Shawger, person-
ally, and David Stone and Susannah Monks and Helen. Kincaid.
The object is to collect the money due the complainant in his
official capacity for the support and care of the widow above
mentioned, at the asylum.   The testator, by his will, after direct-
ing payment of his debts and funeral expenses, gave to his execu-
tors in fee all his real estate to their use for the life of his wife,
on the express trust to apply the net rents and profits to her
support (she was then insane) while she should continue to be of
unsound mind, and if necessary to sell the property itself, and
in their discretion apply the proceeds or the interest or income
thereof to the same use.   And he also gave them the residue of
his personal estate on a similar trust for her benefit.   The will
also declares the further trust to permit her, if restored to reason,
to use and occupy, so long as she remains of sound mind, the

real estate which may not have been sold under the will, and receive the benefit thereof, and the income of the personal estate which may not have been expended; and gives her power while of sound mind to dispose of the property by will.   It also directs that if she die intestate, the property shall, at her death, be equally divided among David Stone, Susannah Monks and Helen Kincaid.   The testator died on December 9th, 1872.   The will was proved by both executors on the 26th of that month. In July, 1873, an application was made to this court by Helen Kincaid, for a commission to inquire as to the lunacy of the widow, and it was issued.   By the inquisition she was in the same month found to be of unsound mind, and on the 14th of October following, Norris was appointed her guardian.   In September, 1873, previously to his appointment as guardian, Norris applied to the superintendent of the asylum to admit Mrs. Shawger as a patient there.   The application was signed by himself alone and in his individual capacity, and not as executor.   He and Willis, his co-executor, signed a bond to the treasurer of the asylum, whereby they bound themselves to pay $7 a week for the care and board of the lunatic while she should remain there.   Norris signed the bond personally; Willis added " Ex." to his signature.   In December, 1879, the account of the executors was passed by the Morris orphans court.   It showed a balance against them of $1,570.82.   On the 23d of December, 1879, Norris was, on his own application, discharged as executor. Willis continued in office.   The bill was filed May 13th, 1882. There was due to the asylum, for board and clothing of Mrs. Shawger, January 1st, 1883, the sum of $1,133.85.

The bill alleges that the executors placed Mrs. Shawger in the institution, and that they refuse to pay the money due on the before-mentioned bond.   It also states that both executors, Norris and Willis, are insolvent; that the latter has appropriated the testator's personal estate to his own use, and has wasted the real estate, and has been guilty of a breach of his trust in failing to apply the estate to the support of Mrs. Shawger, and that Norris has long been aware of Willis's misconduct in misappropriating and wasting the trust property,

but before his discharge did nothing to prevent it, and since then has refused to have anything to do with the estate. It prays that Willis may be removed from his trusteeship; that a receiver may be appointed to take and hold the trust property and apply the income and the principal, if necessary, to the payment of the complainant's debt, and, if necessary, to sell the real estate and apply the proceeds of the sale to the payment of the debt and the future support and care of Mrs. Shawger, according to the trust declared in the will; that Willis may account for the estate in this court, and be required to deliver to the receiver all the securities and other personal property of the estate, and pay him the rents and profits of the real estate, and that Norris and Willis may be ordered to convey the real property to the receiver. There is also the prayer for relief generally. Willis has answered. He denies that he placed Mrs. Shawger in the asylum, or that she was placed there in pursuance of the trust in the will, but he alleges that she was put there by Norris alone, as her guardian, and that though he, Willis, signed the bond, he did so at Norris's request, and merely as security for him as guardian. He denies the complainant's right to sue him in this court on the bond, or to call him to account.

I do not see any ground on which this suit can be maintained. The complainant is a creditor merely by simple contract. He has not only not exhausted his remedy at law, but he has not had any recourse to law at all. He has therefore no standing here. In *Oakley* v. *Pound, 1 McCart. 178,* cited on the part of the complainant, the suit of a simple contract creditor for the recovery of his debt was indeed maintained in this court, but it was on the ground that the creditor had a lien on the property which the suit was brought to reach. Here there is not only no lien, but there is no claim of any, nor is there any ground for such claim. The fact that the debtor is a trustee, holding the trust property which ought, in justice, to be applied to the payment of the debt, does not alter the case. The officers of the asylum, to secure payment for the care and board of Mrs. Shawger, took a bond from Norris and Willis. The bill alleges that they are both insolvent, but there is no proof that Norris is so,

and if there was it would make no difference.    The latter prob-
ably made the application for the admission of Mrs. Shawger
into the asylum in his capacity of executor, for he was not guard-
ian at that time; he was not appointed until afterwards.    But
he and Willis are both liable personally on the bond, and it is a
matter of no importance how the application was made.    The
fact that a person is a creditor of the trustee of a trust estate in a
liability incurred for the benefit of the *cestui que trust,* does not
of itself give him the right to collect his debt in equity, and to
that end to call the trustee to account.    The claim in this case is
of course a highly meritorious one, and the trust estate, if there
be any in the hands of Willis, ought to be applied to the pur-
pose for which he received and holds it, and, if necessary, the
land should be sold.    But those considerations do not confer on
the creditor the right which is claimed.    Beyond question, Nor-
ris and Willis are both liable to pay the complainant's debt, and,
as before stated, it does not appear that Norris is not able to pay
it.    And again, it is obvious that, as guardian of Mrs. Shawger,
he is the proper person to call Willis to account, and to take any
steps that may be necessary to protect the trust property.    The
bill will be dismissed, with costs.